Case number 14-5030, Chiquita Brands International Inc. Appellant v. Securities and Exchange Commission et al. Mr. Lynch for the Appellee, for the Appellants. Ms. Hanker for the Appellee SEC. Ms. Rosenbaum for Appellee National Security Archive. Mr. Lynch for the Appellant. Mr. Lynch for the Appellant. Good morning. Good morning, Your Honor. May it please the Court, Mark Lynch for Chiquita. In its brief in this Court, the SEC acknowledged for the first time that Exemption 7B protects more than the fairness of trials. It now takes the position that 7B applies when release of records that have been compiled for law enforcement purposes would compromise the overall fairness of a pending adjudicative proceeding in any way, without any limit, on what stage of the proceeding or in what context the unfairness could arise. The SEC's final decision in this matter appears at pages 354 through 366 of the Joint Appendix, and nowhere in those 13 pages will you find any mention of overall unfairness. That was not the standard that the SEC applied, and that failure is sufficient for the Court to set aside the SEC's decision and remand for determination under the correct standard. Before the Commission, Chiquita argued that disclosure under FOIA would cause unfairness at the pre-stage trial of the United States litigation. So I understand your point about the SEC's order, and I understand that, but taking their argument in the brief, the whole case seems to turn on the one sentence in Washington Post, in many respects, in the Washington Post case. And that one, for me at least, and that one sentence talks about would furnish access to a document not available under the discovery rules and thus would confer an unfair advantage on one of the parties. So there are a number of issues related to that sentence. I guess one thing in footnote 10 of the SEC's brief is, does that mean not available now under the discovery rules or not available permanently under the discovery rules? So I guess I'd be interested in your response on how we should read that aspect of it. The most important unfairness would be the obliteration of Chiquita's opportunity to seek a protective order under Rule 26C. What would that protective order look like? Well, typically, a blanket protective order, particularly in cases of this magnitude, are now standard practice. And if then the parties can apply for a more protective order. What would this protective order look like? The protective order we would like to get would be that the parties would be prohibited from disseminating documents that are produced in discovery until they are actually filed with the court or introduced as evidence at trial. And that's completely consistent with the scope of protective orders that were upheld by the Supreme Court in Seattle Times v. Reinhart. That case made clear that as a matter of modern practice, discovery is not conducted in public. You didn't cite these cases, but there are cases out there that say also that trial courts shouldn't let discovery be one-sided. So in other words, ordinarily, there would be an abuse of discretion for a trial judge to say, plaintiff, you can take discovery, but defendant, you can't. Right? Isn't that one of your arguments? That was one of our arguments, Your Honor, that there would be asymmetrical timing of discovery. Because discovery has been stayed in this case, the FOIA request would enable the plaintiffs to get a vast amount of material, while Chiquita would not be able to get any material. Now I want to be clear, what we're talking about is getting Chiquita documents that Chiquita had to submit to the SEC. We're not saying that they can't use FOIA for other types of preparation. And the city of Minotia, I may be mispronouncing that, but the Wisconsin case from the Seventh Circuit, what Judge Posner was saying that the parties could do there in a securities case when the stay was in effect, is they could collect public documents. They could do all the investigation they wanted to do. But this case is different because here they want to get our documents that just because of the virtuity of the SEC's investigation are in the possession of the SEC instead of in our possession. But now in 2011, Department of Justice released many of these documents, right? Right. What effect does that have on your argument? Well, those documents, we're not raising any argument with respect to those documents. But there are a great many more documents that were not in the Justice Department release that still involve these payments, and those are very much at issue. And that was laid out very clearly for the SEC. We identified the particular documents that had not been covered by the Justice Department release and had not been released anywhere. They also say about the sentence in Washington Post, turning back to that, that because the court said it may be that that was not a definitive holding. Do you want to respond to that? That's all in your reply brief, but I want to give you an opportunity to respond to that. I think it's important to understand if you look at that paragraph in Washington Post, the court said we hold that the government bears the burden of showing that a trial or adjudication is pending or truly imminent and that it is more probable than not that disclosure of the materials sought would seriously interfere with those proceedings. And then, as part of its remand direction, directed the court to consider these other two considerations, including the sentence that you focused on, Judge Kavanaugh. And that's where it said it may be that disclosure through FOIA would furnish access to a document not available under the discovery rules and thus confer an unfair advantage on one of the parties. Now, to be sure, that's not the holding, but it's not pure dicta either. It was what the Court of Appeals told the district court to look at, and we think that the SEC failed to look at that in this case. The argument of the SEC is that even if we say that it's not dicta, it confers an unfair advantage because the party would get a document that they could use at trial or to prove the merits of their case, which they would not ordinarily have received. And that's not the case here. Isn't that the SEC's argument? What's your response to that? I think that's one of their arguments. And, again, our position is if it turns out that any of these documents eventually make their way into evidence, and that, of course, is the very straight gate through which documents pass, they would be public. There's no doubt about that. But, again, relying on Seattle Times, our position is that the great mass of material that has to be turned over in litigation, material that we produce to the SEC, we should have an opportunity to get a protective order to prevent public dissemination of that document, those documents, until they become part of the court record. How can you, let me preface this by saying, Washington Post is from a long time ago and the Supreme Court in FOIA cases more recently has chastised the lower courts for departing from the text of FOIA. How can you square that sentence in Washington Post with the text of FOIA? The text of the statute is that 7B protects records or information compiled for law enforcement purposes. That's the preface to Exemption 7. The disclosure of which would deprive a person of a right to a fair trial or impartial adjudication. And I would focus here in terms of, if I've got to go back to the plain language of the statute, forget about Washington Post, I focus on impartial adjudication. And if I, if Takita's opportunity to get a protective order is completely destroyed, it's not just the deprivation of an impartial adjudication, there'll be no adjudication of that right. So that would be the language that I would rest on. Are there no other tools that the court would have to protect you? I mean, protective disclosures, you know, a protective order is one mechanism, but to say that it's totally destroyed, the ability to have impartial. The SEC has argued that a lot of our other arguments are capable of correction. The fact that the plaintiffs get a head start. You pointed out Judge Wilkins had a serious problem. They said, oh, well, you know, he can give you more time in discovery to catch up. And, you know, they have other corrective arguments. But if these documents are released, we simply are not going to be able to make a Rule 26 protective order to seal discovery documents that are otherwise, have otherwise already been released. That's part of the ruling in Seattle Times as well. So that, I don't know how, I don't see any way that that right can be resurrected. And certainly, the SEC hasn't pointed to it. That was not an issue on which they identified any corrective possibility. To go back to Judge Kavanaugh's question about the text of the act, isn't the SEC's argument that impartial adjudication, and I think that there's some support for this in the Attorney General memo, that that's just kind of another synonym for fair trial. Fair trial is a trial that's in a courtroom, but they also wanted this act to extend to administrative proceedings, other types of proceedings. So that's why they have impartial adjudication. And you're trying to stretch that to mean kind of any adjudication of any issue during the proceeding. Really, what this is talking about is the actual decision that has to be made on the merits. Why isn't that a proper reading of the statute? Because, here I go back to Judge Kavanaugh's plain language. There's nothing in the statute that limits adjudication to administrative adjudication. And when you're talking about trial proceedings, in the course of getting a case ready for trial, a district judge makes many adjudications. And one of them would be an adjudication on a motion for a protective order. So our position is that the term adjudication is not limited to administrative adjudication. Now, I'll concede that there is some language in the Attorney General's memorandum that supports that. There's no case law to support that. And most fundamentally, I don't think it's consistent with the plain language of the statute. What about the case law that this, in general, is supposed to be pro-disclosure and narrowly construed against disclosure? Well, that's true. There's absolutely no doubt, Your Honor, that the overarching purpose of the Freedom of Information Act is public dissemination of documents, and the act should be narrowly construed. But here, 7B seeks to protect the rights of parties that are engaged in litigation. And I keep coming back to the fact, a very important part of that right is seeking protective orders under Rule 26C to make sure that the vast amount of material that has to be produced in discovery is not misused. And, you know, the Freedom of Information Act has, you know, nine exemptions and subparts of those exemptions that protect the rights not only of the government, but of parties, individuals and corporations, to make sure that they're not abused by the overarching purposes of the Freedom of Information Act. Isn't it odd that the disclosure would depend on the existence of adjudication like this, though, that if there were no adjudication or it were resolved, or if it were before any adjudication, this would be released or at least 7B wouldn't be available? And maybe that's just the way it's written. I just find it an odd structure to have a contingent based on the uncertainty of pending litigation, but that's what we're stuck with, I suppose. We could identify a lot of oddities in the Freedom of Information Act, but it is the way it's written, Your Honor. Yeah, that is true. Unless the Court has any other questions, I think you've got my points. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Sarah Hanker and I represent the SEC. The SEC correctly interpreted Exemption 7B by looking to the statutory text and the two-part test set forth by this Court in Washington Post. The statutory text of the exemption is to be narrowly construed, and it provides that documents are exempt from disclosure only when they're released would deprive a person of their right to a fair trial or an impartial adjudication. So what do you do with the sentence in Washington Post? That seems on point to me. If we follow Washington Post as written, disclosure through FOIA would furnish access to a document not available under the discovery rules and thus would confer an unfair advantage on one of the parties. That's this case, right? It's not this case, and here's why. First of all, it's not available under the discovery rules. I don't mean to interrupt, but just to underscore something, it's not available under the discovery rules at this time. That's correct, right? At this time, but they will be. Chiquita has made plain from the outset that they will produce these documents. But what about their ability to seek protection under protective order? That's a pretty substantial guarantee, isn't it? That's a check the court can use, and they'll be denied that here. Well, they will, but there's a distinction between the process of FOIA and discovery. The second prong. But the FOIA statute tells us to look at the fairness of the proceeding. How could this proceeding be fair if they're not given a chance to have a protective order? Well, let's look at the second prong of Washington Post, because I think it's fairly nuanced in that it helps us work through this example. It requires that it is more probable than not. The court needs to make the determination that it's more probable than not that this disclosure would seriously interfere with the fairness of the trial. So is your point whether it's seriously or not? Where is that? That's in there. It then fleshes that out with the specific examples of what the court is supposed to do, the district court was supposed to do on remand in that case. Correct. So it's on the last page. Well, it's on page 102. The court makes clear that it does not automatically follow that disclosure of this report would deprive the party of a fair trial. The second prong requires that we take a look at the standard of whether it would, whether providing these documents would seriously interfere with the fairness of the trial. And it bears noting, and the court does note in this case, that would is a higher standard than a lot of the other FOIA exemptions. Right. And I grant you all that. It does say all that. But then it really gets to where the rubber meets the road, is where it then fleshes out what the district court in that case was supposed to be doing on remand. And maybe I'm parsing this too closely, but then it says it has two it may be sentences that are really critical. And the first one is the publicity, which is not the issue here. And the second one is the discovery. And it seems to say would furnish access to a document not available under the discovery rules. It seems to automatically then equate that to unfair advantage because it says and thus would, thus. And, again, maybe I'm parsing this too closely. That's a fair critique of what I'm saying. But I'm reading it as it's written. It says and thus would confer an unfair advantage on one of the parties. So it seems to me if it's in a document not available under the discovery rules or not available without the protection that comes in discovery, that's unfair advantage, right? Well, doesn't it depend on the nature of the document? I mean, if one document is not available under the rules of discovery. Then you can't get it. And you could get it through FOIA. How can we say without scrutinizing whether it would seriously interfere? I agree with you on that. How can we say? That's a critique of Washington Post. I think that this court has another, some instructive guidance in another case, the Walsh, the Northview Walsh case. It came a year later. It is a 7A case, but it's got some analogous points that are helpful. In that case, a party was trying to obtain documents through FOIA prior to being able to get them through discovery. And this court acknowledged that the fact that a defendant in an ongoing criminal proceeding may obtain documents via FOIA that he could not procure through discovery, or at least before he could obtain them through discovery, does not in and of itself constitute interference with a law enforcement proceeding. Again, that's under 7A. But what the court went on to hold is that what matters is whether the release of those documents would interfere with the fairness of the enforcement proceeding. It's not enough just to show that documents that aren't available... So why wouldn't these seriously interfere? Why wouldn't the release of these seriously interfere? Well, I think that depends on the facts of the case. I don't know. Again, one of the things that matter to this court in the North case is the standard. In 7A, it used to be that Congress used the word would, and they changed it to the word could, noting that this change relieves the agency of the burden of proving to a certainty. So it's actually an easier standard in this case. And the court found that proving the interference was required, not just proving that documents were available, was sufficient. Why shouldn't we be bothered by the fact that Chiquita won't have access to a protective order? That's the typical way these cases are handled, right? They're sensitive documents. You get a protective order. But under this scenario, they're denied that opportunity. Why isn't that, on its face, fundamentally unfair? Well, they complain about not having a protective order because they fear that they will face annoyance and embarrassment and expense. Those don't really seem to convey an advantage on the other party, particularly because the SEC has already agreed to redact personally identifying information from those documents. They think that concern is lessened, certainly with respect to individuals or at least lower-level individuals. It just doesn't go to— Isn't also part of their argument, though, that the documents having been released will give the plaintiffs in that litigation an opportunity to kind of jumpstart their investigation? Sure. But I think legal precedent is extensive that shows that parties are allowed to do investigations outside of discovery. It happens all the time through FOIA, through looking for witnesses to interview. As a matter of fact, in this case, Chiquita laments that it can't do its extra discovery investigations on these plaintiffs because a lot of them use pseudonyms. But it suggests that they would be if they could. It takes away from their argument that there's a head start by doing your own investigation prior to discovery beginning. Just on your reliance on 7A, that seems a different context. There's not an individual party who's claiming some interference with his or her or its rights in that case. Rather, it's the government who is claiming that it would interfere with the enforcement proceedings. So I take your point on its overall relevance to the discovery issue versus FOIA, but it seems like it's a different context there. It certainly is. There are just a few relevant points that kind of help to show that this Court looks to whether the obtaining of documents that are unavailable in discovery ends the question or whether you have to look and see how that would seriously interfere. If all we had was Judge Mikva's opinion in Washington Post, you agree that would end the question, right? No, I don't think so. I mean, first of all, the SEC's position fundamentally is that these documents are available. They're not privileged. They're not otherwise undiscoverable. They will be produced. Plaintiffs will get them. Chiquita's been clear on that. And so your reading of Judge Mikva's opinion was that he was talking about documents that would in no way be released, no way discoverable ever. But here you have an instance where they will be discoverable. Is that your distinction? The Mikva opinion was which case? I'm sorry, that's the Washington Post opinion. I'm sorry. Excuse me. I should know that. Yeah, I think, yes, I think it's clear by the language. Not available under the rules of discovery. But didn't the commission use an unduly restrictive standard when it made its decision by saying that the exemption really only comes into play if the release would generate pretrial publicity that would result in an unfair trial and basically thought that that was the only thing that they had to balance, whereby now you're conceding that that's not the only issue, but that a release that would somehow kind of tip the scales of unfairness because of the timing of its release, that that could under some circumstances meet the standard for the exemption. I mean, don't you concede that in your brief now? I'm not sure I understand your question. Are you talking about Chiquita's statement that the SEC requires for 7B to apply that there's pretrial publicity? That appeared to be the commission's rationale, right? No, it was not. That's not ever been the commission's rationale. Chiquita misread our opinion, and that's never, I think it's best explained. Well, how should we read your opinion? Tell me what language in the opinion says otherwise. Okay. It's actually laid out fairly well on pages 17 to 19 in our brief, but what we were doing is we were discussing Chiquita's first argument about how discovery would be unfair because of these various arguments. And when we got to the argument that they thought discovery would be unfair based on not being able to obtain a protective order, we couldn't really identify, they didn't identify any harm, and we couldn't really think of what harm they could be alleging other than that third parties would get these documents and use them. And that really seemed to go to their second argument. So we just made the assumption that that's what they meant, and they have misconstrued that. The district court didn't misunderstand what we meant, and the intervener doesn't misunderstand what we meant. And even Chiquita, when it did its motion for reconsideration of the SEC's original opinion, at that point didn't indicate that it misunderstood that part. So, but you would agree now, before this court, that the language of 7B, by focusing on depriving a person of a right to a fair trial or an impartial adjudication, that that right could be implicated not just by something that affects the ultimate determination, but it could be affected by something that would affect the discovery or some preliminary determination, right? Certainly, certainly. If there is unfairness during discovery that's so significant that it interferes with the trial being fair, of course that would make sense. Would you think getting a head start on discovery is an advantage? I think it might be a slight advantage, but certainly not enough in this circumstance to conclude that it's more probable than not that it would seriously interfere with Chiquita's right to a fair trial, particularly because the court has, the district court has so many methods and is so used to dealing with monitoring discovery. I think there's no reason to assume that they wouldn't have plenty of time to conduct the discovery that they need and develop the case that they need to develop. But aren't the federal rules of civil procedure, Rules 26 and 34, regarding discovery and production of documents, by having a good cost standard in the way that everything is set up, isn't it pretty much presumed that it would be unfair to allow one side to take discovery and not the other, that you would have to have some good cause to do something like that, and that absent that it would be an abuse of discretion to allow discovery to proceed in that fashion? I mean, isn't that the basic tenet of how discovery works? It's got to be both ways? I agree that it is a basic tenet of how discovery works, but this isn't discovery. This is a FOIA. I understand, but my point is that, I mean, the way I see 7B is that they put this exemption in here to say that, look, if somebody has to produce documents as part of a law enforcement investigation, then fine, they produce those documents. But they shouldn't be prejudiced. If they're a party to some litigation, and those documents are sought under FOIA, for having participated in this law enforcement investigation, it's supposed to basically kind of hold them harmless, so to speak, for having produced documents to the government. Isn't that what the purpose of this is? And isn't that purpose frustrated? If someone can kind of get a head start in their discovery by getting documents notwithstanding this exemption? I think we have to look back at whether the disclosure of those documents would seriously interfere with their right to a fair trial. Sometimes it might be the case, but other times not. It depends on what the documents are. It depends on what else is going on in the case. What in the order shows that that particular balance was ever done by the SEC? Well, first and foremost, we found that the documents were available under discovery, because there is no rule of discovery prohibiting their production. But that's different than what you just said. Right? We made our determination based on the sparse amount of argument that Chiquita, it's Chiquita's burden to convince us of how they would be harmed, of how it would be unfair. And we made our determination based on the sparse amount of argument that Chiquita provided. They really did not articulate how this unfairness would manifest. And it is their burden to do that. And this Court has in the past made clear that. I would think you would actually cut the other way. Isn't it obvious that when you get a head start, you have an advantage? And wouldn't it be your responsibility, SEC's responsibility, to say why that's not the case? Why it isn't the case in these circumstances that giving one side a head start in the discovery process does not undermine the fairness of the trial in here? And I think at least that's the question I'm wondering. How is it that it's not unfair to give them a head start and then to deny them the ability to have a protective order, the typical mechanism that's used? Well, I don't think that we said that there was no unfairness by the head start. I think we just found that the unfairness didn't rise to the level of creating an unfair trial. And that was a finding that we articulated. But if that finding was made, it was only made in the context of publicity, right? No, no. If you look back at the record, which I have right here. The sentence and the ruling, I think, is what we're talking about. And it immediately jumps then to the publicity. I can read the record to you. It's on page 9 of the March 28th letter. It says, It appears then that disclosure of the 7B CTR documents now could only provide an advantage to plaintiffs by giving them access to documents earlier than they would otherwise get them. This potential advantage does not amount to deprivation of the right to a fair trial. That's a conclusion. What's the finding it's based on? It's a conclusion. How so? The conclusion was based on lack of any other articulation by Chiquita of how they would not be able to develop their case, get discovery they need. Chiquita, you know, these 23 boxes of documents are likely to form the basis of what this lawsuit is about. And Chiquita already knows what's in them. They're Chiquita's documents. So to that effect, you know, Chiquita would need to take discovery on the other plaintiffs. But, I mean, the truth is the truth. What's in these documents, if there's anything meritorious in them or evidentiary value, it comes out. How does the truth make a lawsuit unfair? Well, we have discovery rules, though, that set forth the timing. I guess that goes back to Judge Wilkins' point. We have these discovery rules that set up an orderly process and don't just say, well, the truth will out. I mean, they're set up rules on timing, what can be disclosed, protective orders, privileges, what have you. And I take your point on what the commission said. It does seem to be based, though, on an assumption, which I don't think is consistent necessarily with the federal rules, that a head start on discovery doesn't have an impact on your litigation rights. So, I mean, it's a close call. If I could go back to Northview Walsh, which I understand is only an analogous case. I'm not tweaking you when I point out the distinction. I'm just saying we've got to think about the overall context of what's said there. But go ahead. Okay. This court, an argument was made for this court in that case where they were concerned that if these documents were released before they were available in discovery, it would not square Judge Gissell's regulation of the timing and scope of discovery. And this court wasn't bothered by that. The court said the district court retains full control over the evidence admitted or lines of inquiry pursued in the criminal case. If any evidence or question is irrelevant to the trial, the court can simply keep it out. It found that the district court was capable of rectifying any small imbalance that could pop up as a result of these documents being disclosed through FOIA, not through discovery, before discovery started. That would have been true in Washington Post as well, right? I think so. But doesn't that cut against you? In other words, in the trial court for any related litigation in the Washington Post case, could have kept out material that didn't belong at the trial. But nonetheless, the Washington Post court said that 7B covered getting documents not available under the discovery rules. It said it may. And I really think that by saying may, and if you look at it in the context of the paragraph that it's in, it's clear that it is intended to be looked at in the context of the second prong. Okay. I think the may also could be read, so I don't think it's clear, first of all. I think the may also could be read to mean that it may be, as a matter of fact, that in this case disclosure would furnish access to documents not available under the discovery rules, and so on remand the district court was supposed to figure out the answer to that factual question. That's true. So I don't think it's clear. I take your point on reading it in context of the paragraph, so I get that. Okay, great. Thank you very much. I think I'm out of time. You are. No further questions. Thank you very much. May I please support Adina Rosenbaum on behalf of the National Security Archive? I want to start with a question of a protective order, because that seems to be Chiquita's main argument now about why these records should not be released, is that it would not be able to get a protective order if they're released under FOIA. Chiquita has abandoned its argument at this point that releasing the records without a protective order would lead to this sort of pretrial publicity that would cause there to be an unfair trial. Evidently, then, the reason that it doesn't want the records released without a protective order is that it's worried that releasing the records publicly would cause an embarrassment or affect its reputation. But reputational interests are not the interests protected by FOIA Exemption 7B. And I think that goes to your question, Judge Kavanaugh, about why isn't it a little bit odd, then, that they should have this protection if they're in trial versus when they're not in trial, is that Exemption 7B isn't going to whether their records can be released publicly and, therefore, affect their reputation if they're known to the public. It's going to whether it would deprive them of a fair trial in the litigation that they're involved in. On the question of Washington Post and the dicta about that, you know, I really mean It's not dicta. It was the direct order to the district court of what to consider on remand. That's not dicta. I mean it more as musings by the court of some possibilities of what might happen. It's the order to the dicta. We can debate, at least for me, we can debate what that sentence means. But it was a direct order to the district court of what to consider on remand. That is not what I usually think of as dicta because the sentence following says the trial court on remand is best situated to consider whether the facts here are sufficient to meet that prong. So I don't think calling it dicta would work. It doesn't work for me, but just speaking for myself on that. Anyway, keep going. It's the court sort of musing about some of the possibilities on remand and the specific sentence about Is musings different than dicta? And I think that sentence about documents not available under the discovery rules, saying they wouldn't be available under the discovery rules and thus would confer an unfair advantage on one of the parties, I think that all has to be taken together. That it may be that in this instance they wouldn't be available under the discovery rules and in this instance by not being available under the discovery rules would cause an unfair advantage. But I don't think that the court is saying that in every situation, a document not being available under the discovery rules would lead to an unfair trial. Isn't the more reasonable reading of this is that they didn't know whether the document would be available under discovery rules and so they were saying it may be that it's not available under the discovery rules, but if it turns out that it is in its release, that thus would create the unfair advantage? See, I read this to say that they're not sure whether it would be available under the discovery rules and they're not sure if it's not whether it would lead to an unfair advantage. And I think helping support that is the fact that in many cases since then, the court has specifically stated, and Northview Walsh is one of those cases, that the fact that records aren't available under the discovery rules does not mean that the records are exempt under FOIA. But those are different exemptions. So, I mean, this exemption seems to be written precisely to protect and hold harmless someone who is engaged in litigation, right? It's written to make sure that person is not deprived of a fair trial. It's not about sort of unfairness, untethered to the fairness of the trial. It's about a fair trial. And I want to also address the word adjudication. Adjudication is defined in the APA, 5 U.S.C. 551, Section 7, as an agency process for the formulation of an order. Takeda suggested instead that we should look at the AG memo, but that also interprets adjudication as an administrative determination in an agency. But even if we look at one of the other definitions that they use, like the Blacks' definition talks about the legal process of resolving a dispute or the process of judicially deciding a case. So both the words trial and adjudication, which they use to try to get away from the fact that this isn't about the trial. I want to go back to your Washington Post point. Why isn't your response that what Judge Mickler was saying there was describing documents that would never be available under discovery, and here we have a set of documents that will be someday available? I think that's another. I don't think that Judge Mickler was saying that in all instances, even if the documents aren't eventually available under discovery, that they would have to be withheld. But I do think that that's an additional reason why the documents here should not be withheld. The litigation in Florida can basically proceed in one of two ways. Either it's going to be resolved on threshold issues, in which case discovery questions or whether records are released in discovery is never going to come into play. Or it will be resolved or it will proceed through to trial and the discovery stay will be lifted and Chiquita has admitted that under that situation it will make these documents available. In neither situation would release of the documents here affect the decision-making in that case, which is what Exemption 7B goes to. And I want to address one final thing I know. Is your standard in your briefing, you talk about this decision-making standard, is that significantly different than the standard the SEC is talking about here? I don't think it's a different standard. I think we use slightly different words. But I think we're both saying that it has to affect the decision-making in the case, what's happening in the case. It can't be unfairness in a vacuum where every time a party says, oh, I've been treated unfairly, records are accepted. But it's ultimate decision-making, right? It's ultimate decision-making. Not discrete decision-making. It's decision-making that then affects the ultimate decision-making. I want to address one final point, which is that there has been a lot of questions about one-sided discovery or a jumpstart on discovery, but there's no jumpstart on discovery here because none of this is part of the discovery process. It's a well-settled part of litigation that parties can engage in fact-finding outside of the discovery process, and this Court has said that, that the discovery process and FOIA are different processes. People can, you know, interview witnesses while there's a discovery stay, and that's not, if those witnesses are willing to be talked to, that's not somehow circumventing the discovery stay. Making a request under FOIA is no different. When people are seeking information under FOIA that they can't currently get in discovery, they're not circumventing a discovery stay or doing something else unfair in discovery because they're not seeking those records through discovery, and, therefore, the discovery process is not implicated. Thank you. Thank you very much. Thank you. Mr. Lynch. If anyone has any questions, I think I can, I don't think I have anything to add. Okay. Case is submitted.
judges: Griffith, Kavanaugh, Wilkins